IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GARY HALL, JR., | No. C 09-0057 RMW (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JASMINE A. TEHRANI, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, filed a second amended civil rights complaint ("SAC") pursuant to 42 U.S.C. § 1983 against defendants. Defendants have moved for summary judgment. Plaintiff has filed a motion under Rule 56(f), requesting the court deny defendants' motion, and a variety of declarations and other motions. The court construes plaintiff's Rule 56(f) motion as both a motion to continue, and an opposition to defendants' motion for summary judgment. Defendants have filed a reply. Having carefully considered the papers submitted, the court hereby GRANTS defendants' motion for summary judgment for the reasons set forth below.

### BACKGROUND[1]

Defendant Dr. Jasmine Tehrani ("Dr. Tehrani") has been a senior psychologist for the

---

[1] The following facts are viewed in the light most favorable to plaintiff.

Order Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.09\Hall057msj.wpd

Board of Parole Hearings ("Board") in the Forensic Assessment Division ("FAD") since 2006. (Decl. Tehrani at ¶ 1.) Since 2007, defendant Dr. James Murphy ("Dr. Murphy") has been a contract psychologist through American Correctional Solutions ("ACS"), and would prepare psychological reports on life inmates within the California Department of Corrections and Rehabilitation in anticipation of their parole-suitability hearings before the Board. (Decl. Murphy at ¶ 2.)

On March 3, 2008, Dr. Murphy interviewed plaintiff for approximately one hour for the purpose of evaluating plaintiff's current risk to public safety. (SAC at ¶ 3.) At the beginning of the interview, Dr. Murphy informed plaintiff that he had read all of plaintiff's appeal grievances which were kept in his prison central file. (Id. at ¶ 4.) At the conclusion of the interview, Dr. Murphy asked to borrow plaintiff's "achievement portfolio," in order to help him complete plaintiff's psychological evaluation. (Id. at ¶ 3A.) The achievement folder contained copies of plaintiff's artwork and cartoons, as well as letters of recommendation regarding his artwork and cartoons. (Id., Ex. C.) To assist in his evaluation, Dr. Murphy reviewed plaintiff's central file, medical file, prior psychological reports prepared for the Board, answers plaintiff provided to Dr. Murphy's questions, and plaintiff's achievement portfolio. (Decl. Murphy at ¶ 3.)

Although Dr. Murphy promised to return plaintiff's portfolio when he finished plaintiff's evaluation report, on May 15, 2008, plaintiff wrote to Dr. Tehrani, Dr. Murphy's supervisor, to request the return of his portfolio. (SAC at ¶ 3A, Ex. C at 17.) On June 22, 2008, plaintiff received his achievement portfolio and a responsive letter from the staff services manager at the Board of Parole Hearings. (Id. at ¶ 3A, Ex. C at 18.) Plaintiff wrote again to Dr. Tehrani on June 24, 2008, complaining that Dr. Murphy's evaluation was inaccurate. (Id., Ex. F at 107). Plaintiff wanted verification that Dr. Tehrani reviewed the evaluation; requested proof that state or federal law stated that plaintiff may raise any disagreements with his evaluation at his next Board hearing, or submit a written rebuttal with his evaluation for future reference; requested the address for American Correctional Peer Review Board; complained that he did not know Dr. Murphy was conducting any psychological tests, disagreed with the use of those tests and the failure to give plaintiff adequate notice or information of such tests; and asked why, as a matter

of course, such interviews were not taped. (Id., Ex. F at 107-08.) The staff services manager responded to him on July 15, 2008, giving plaintiff his options if he wished to voice his concerns or disagreements with the psychological evaluation, and noted that "this issue" would not be addressed in future correspondence. (Id., Ex. O at 04.)

In the psychological evaluation, Dr. Murphy reported that he believed plaintiff had not programmed in a stable or positive manner since his last evaluation. (Decl. Murphy at ¶ 4; SAC, Ex. B at 2.) Dr. Murphy also believed that plaintiff had not yet identified the underlying causes for his commitment offense. (Decl. Murphy at ¶ 4; SAC, Ex. B at 2, 6, 9, 10.) Based on plaintiff's central file and other documents, including plaintiff's writing and drawings, Dr. Murphy believed that plaintiff "appeared to cajole or manipulate persons into taking or refraining from certain actions." (Decl. Murphy at ¶ 4; SAC, Ex. B at 8, 10.) Dr. Murphy concluded that plaintiff represented a moderate risk to re-offend, and determined that plaintiff had a habitual inability to take responsibility for his behavior. (Decl. Murphy at ¶ 4; SAC, Ex. B at 6, 10.)

Plaintiff remarks that Dr. Murphy's evaluation was extremely unfavorable, and at odds with plaintiff's prior evaluation report generated by Dr. Richard Starrett (SAC, Ex. N), which had been completed 14 months prior to Dr. Murphy's. (SAC at ¶ 10.) Plaintiff also notes that all of his grievances were filed after Dr. Starrett's evaluation report. (Id.) Plaintiff then points to a variety of factual inaccuracies listed in Dr. Murphy's report (id. at ¶¶ 11-24, 27-28), and claims that Dr. Murphy's use of the Hare Psychopathy Checklist Revised and the Historical-Clinical-Risk 20 tests were inappropriate because California had previously banned their use for life term inmates. (Id. at ¶ 33.)

Plaintiff asserts that the Board quoted Dr. Murphy's evaluation, which had attacked plaintiff's literary works, and that was a reason that his parole was denied. (Id. at ¶ 38.) Plaintiff claims that Dr. Murphy's evaluation was in retaliation for plaintiff's literary works and grievances filed.

///

///

**ANALYSIS**

I.   Federal Rule of Civil Procedure 56(f)

Plaintiff has submitted a motion to deny defendants' motion for summary judgment, plus six declarations, totaling 77 pages, not including the additional pages plaintiff used for exhibits. Plaintiff's pleadings appear to oppose defendants' motion for summary judgment, but he also argues that he cannot properly oppose the motion without more discovery.

Federal Rule of Civil Procedure 56(d)[2] provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery. See Fed. R. Civ. P. 56(d); Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998). In making a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." Id. at 853; see, e.g., Nicholas v. Wallenstein, 266 F.3d 1083, 1088-89 (9th Cir. 2001) (district court did not abuse its discretion in denying motion for continuance under Rule 56(f) where plaintiffs had already conducted a large amount of informal discovery and where they did not make clear what information was sought and how it would preclude summary judgment); Margolis, 140 F.3d at 853-54 (district court correctly denied motion for continuance to engage in further discovery under Rule 56(f) where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described, and his assertions appeared based on nothing more than "wild speculation"); see also Noriega-Perez v. United States, 179 F.3d 1166, 1170 n.1 (9th Cir. 1999) (denial of discovery motion proper where party failed to show requested documents were relevant and could have affected the outcome of the summary judgment motion). Rule 56(d) requires that the requesting party show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment. Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp., 525 F.3d 822,

---

[2] Former Federal Rule of Civil Procedure 56(f) was amended in 2010. It is now set forth in Rule 56(d).

827 (9th Cir. 2008).

The court notes that this case has been pending for over four years, and the parties have been permitted to conduct discovery since October 2010. (Dkt. No. 78.) In his motion, plaintiff first argues that he cannot oppose defendants' motion unless Dr. Murphy specifies which grievances and writings he relied upon in plaintiff's central file to support his evaluation regarding plaintiff's behavior, lack of remorse, and moderate probability of re-offending. (Dkt. No. 196 at 4-5, 8-9, Dkt No. 199.) Plaintiff asserts that he cannot be expected to refute Dr. Murphy's evaluation findings without such information. However, plaintiff does not explain how this information is necessary to preclude summary judgment. See, e.g., Margolis, 140 F.3d at 853-54, Noriega-Perez, 179 F.3d at 1170 n.1. It appears that plaintiff wants this information instead to demonstrate that Dr. Murphy's evaluation findings are incorrect. However, the truthfulness of the report is not relevant to whether defendants is entitled to judgement as a matter of law based on a claim that the defendants' actions were motivated by plaintiff's protected conduct, and designed to cause plaintiff harm.

Next, plaintiff asserts that he cannot oppose defendants' motion without more information from Dr. Tehrani. Specifically, plaintiff wants to know what Dr. Tehrani's relationship is to Dr. Murphy. Plaintiff states that Dr. Tehrani's answers to discovery "gives plaintiff good cause to believe [she] has something substantial to hide, which he cannot oppose unless he is permitted to propound further discovery. . ." (Dkt. No. 197 at 5.) However, he does not demonstrate how this "additional discovery would [] reveal[] specific facts precluding summary judgment," see Tatum v. City and County of S.F., 441 F.3d 1090, 1101 (9th Cir. 2006) (emphasis added), or how the sought-after facts are essential to oppose summary judgment, Family Home and Finance Center, Inc., 525 F.3d at 827. Moreover, plaintiff has no basis in information to suggest that there is any direct relationship between the defendants, which makes his request merely a fishing expedition, which is not sufficient to succeed in a Rule 56(d) motion. See Margolis, 140 F.3d at 853-54.

Thus, plaintiff is not entitled to a continuance or a denial of defendants' motion for summary judgment for the purpose of conducting additional discovery pursuant to Rule 56(d).

II.      Motion for Summary Judgment

    A.      Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

    B.      Dismissal of claim for damages and declaratory relief

As an initial matter, the court dismisses several of plaintiff's requests for relief. The law is well established in this Circuit that parole board officials are entitled to absolute, quasi-judicial immunity from damages liability in suits by prisoners for actions taken when processing parole

Order Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.09\Hall057msj.wpd      6

applications.  See Sellars v. Procunier, 641 F.2d 1295, 1302-03 (9th Cir. 1989); see also, e.g., Brown v. California Dept. of Corrections, 554 F.3d 747, 751 (9th Cir. 2009).  Further, the Ninth Circuit has held that a court-appointed psychologist has quasi-judicial immunity from damages liability for acts committed "in the performance of an integral part of the judicial process," such as preparing and submitting medical reports that allegedly contained false statements of fact and omitted material facts.  See Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970) (per curiam).  Since there is no material distinction between a psychologist performing an evaluation of a defendant at the direction of a judge, and a psychologist performing the same function at the direction of a parole board, the court finds that defendants also have quasi-judicial immunity from damages liability for the alleged acts giving rise to plaintiff's claim.  See Von Staich v. Atwood, 2011 WL 3319998, at *2 (C.D. Cal. Feb. 24, 2011); Reece v. Smith, 2010 WL 5317440, at *2 (E.D. Cal. Dec. 20, 2010); Howard v. Rea, 2005 WL 1565002, at *8 (D. Or. June 27, 2005).

In addition, the SAC seeks a declaratory judgment against defendants for violating plaintiff's rights.  (SAC at 4.)  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the jury returns a verdict in favor of plaintiff, that verdict will include a finding that plaintiff's constitutional rights were violated.  Accordingly, a declaration that either defendant violated plaintiff's rights is unnecessary.  This action shall proceed as one for injunctive relief only.

      C.      Plaintiff's retaliation claim

Plaintiff claims that Dr. Murphy created a false psychological evaluation in retaliation for plaintiff's filing administrative grievances against Board officials, and for exercising his right to free speech.  Plaintiff also claims that Dr. Tehrani is liable in her supervisory capacity.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

### 1. Dr. Murphy

Here, plaintiff has failed to demonstrate a genuine dispute of material fact that Dr. Murphy took some adverse action against him. An adverse action is an action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006). In the prison context, the action taken must be clearly adverse to the plaintiff. See e.g., Rhodes, 408 F.3d at 568 (noting that arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances were sufficient to plead an adverse action); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (reaffirming that an allegation of retaliatory prison transfer and double-cell status sufficiently states a claim of retaliation). Dr. Murphy states that the evaluation reports are used to assist the Board in determining an inmate's suitability for parole, and includes the psychologist's opinion on an inmate's risk of future violence. (Decl. Murphy at ¶ 2.) The reports are only recommendations, and are not substitutes for the Board's ultimate determination of an inmate's current risk of dangerousness. (Id.) Plaintiff has failed to proffer evidence to demonstrate that the psychological evaluation was a clearly adverse action against him. Indeed, the regulations provide that the Board must consider all relevant and reliable information available to determine whether a prisoner would pose an unreasonable risk of danger to society if released from prison. See generally Cal. Code Regs. tit. 15, § 2402; see, e.g., Williams v. Woodford, 2009 WL 3823916, *3 (E.D. Cal. 2009) ("the alleged filing of the false administrative chrono fails to state a claim because it is not a sufficient adverse action for a retaliation claim because the chrono was merely informational").

The Board's decision supports the fact that Dr. Murphy's evaluation was but one

consideration upon which the Board relied in making its findings. (SAC, Ex. D "Decision" at 1-12.) Thus, there is an absence of evidence to support plaintiff's assertion that Dr. Murphy's psychological evaluation was a clearly adverse action against plaintiff. Cf. Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998) (rejecting employees' contention that a psychological examination was an "adverse action"); Cary v. Leffler, No. 11-13767, 2012 WL 3300986, at *6 n.2 (E.D. Mich. July 13, 2012) (finding in a prisoner civil rights case that "[h]aving a psychological evaluation performed does not constitute an adverse action that would deter a person of ordinary firmness from pursuing his First Amendment rights."). Without a genuine issue of material fact regarding this first element of retaliation, Dr. Murphy is entitled to summary judgment.

In addition, with respect to the second element of retaliation, plaintiff must show that the protected conduct, i.e., plaintiff's literary works and filing of grievances, was a substantial or motivating factor for the alleged retaliatory action. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and inconsistency with previous actions, as well as direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003). While plaintiff alleges that Dr. Murphy knew about the grievances he had filed against Board officials, plaintiff has not plausibly alleged that Dr. Murphy created a false psychological evaluation "because of" plaintiff's protected conduct.[3] See Brodheim v. Cry, 584 F.3d 1261, 1271 (9th Cir. 2009) (recognizing that, to prevail on retaliation claim, plaintiff must show that protected conduct was the substantial or motivating factor behind the defendants' conduct) (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)) (quotation marks and internal quotation marks omitted).

While it is true that Dr. Murphy commented plaintiff's writings in his evaluation, the content of those writings appear to be but one basis upon which Dr. Murphy based his overall

---

[3] Although plaintiff asserts that defendants also retaliated against him because of his literary works, there is no indication that Dr. Murphy even knew about plaintiff's literary works until he was interviewed for the psychological evaluation.

opinion. (SAC, Ex. B at 7, 9.) Dr. Murphy remarked on the content of plaintiff's writings as one example to show how plaintiff used his skills to manipulate people. (Id. at 7.) One test Dr. Murphy used to evaluate plaintiff looked at plaintiff's current presentation and history, which showed that plaintiff "had failed to conform to social norms and demonstrate lawful behavior," and lacked remorse. (Id.) In the second test, Dr. Murphy's clinical assessment showed that plaintiff "lack[ed] insight into his personality structure, anger control, and causative factors of the life crime." (Id. at 9.) In the evaluation, Dr. Murphy also indicated that over the years, plaintiff had given a variety of reasons as to why he committed the life crime, appeared to blame outside factors, and did not show any desire to delve into the causes of his offense. (Id.) Although Dr. Murphy did make reference to plaintiff's writings, those comments do not demonstrate that plaintiff's writings were a substantial or motivating factor for Dr. Murphy's evaluation or opinion. Notably, the Board wholeheartedly agreed with Dr. Murphy's assessment of plaintiff, and based its opinion on its own perception of plaintiff as well as plaintiff's responses during the hearing. (SAC, Ex. D "Decision" at 8-10.) The Board was concerned that plaintiff showed an inability to follow the rules in a structured environment, and a stubbornness or resistance to other ideas or opinions. (Id. at 4, 8-10.) The Board's decision is further support that plaintiff's writings were not a substantial or motivating factor for Dr. Murphy's evaluation and opinion.

Plaintiff attempts to demonstrate causation and suspect timing through circumstantial evidence. Specifically, plaintiff alleges that on August 23, 2007, plaintiff filed an administrative grievance against Board Coordinator CCI Michael Terry. (Dkt. No. 200 at ¶ 14.) Around October 2007, plaintiff again was dissatisfied with the Board's actions or inactions and filed a complaint with the California Department of Justice, and served a copy on CCI Terry. (Id. at ¶ 16.) CCI Terry responded with a memorandum to plaintiff, and plaintiff responded by filing a staff complaint against him, alleging that CCI Terry's memorandum was inappropriate, unprofessional, and threatening. (Id. at ¶ 17.) Plaintiff goes on to describe further disagreements or inequities between himself and CCI Terry and other Board officials which took place after November 2007. (Id. at ¶¶ 18-22.) Plaintiff then states that CCI Terry scheduled the interview

with Dr. Murphy, and "[o]dds are, [CCI Terry] maligned plaintiff to [Dr. Murphy], which is only reasonable to believe based upon the pronounced contempt [] showed towards plaintiff for exercising his protected conduct against him." (Id. at ¶ 23.)

Bare allegations that plaintiff's disagreements with CCI Terry must have resulted in CCI Terry influencing Dr. Murphy's evaluation are not sufficient to establish that plaintiff's protected conduct was a substantial or motivating factor behind Dr. Murphy's opinion in his psychological evaluation. See, e.g., Pratt, 65 F.3d at 808 ("suspect timing" of inmate's transfer to different prison, without more, insufficient to support inference that the transfer was done "in retaliation for [inmate's] exercise of First Amendment rights") (citation and quotation marks omitted).

Because plaintiff cannot demonstrate a genuine issue of material fact as to the first two elements of retaliation, see Rhodes, 408 F.3d at 567-68, it is unnecessary to discuss the remaining elements. For the foregoing reasons, Dr. Murphy is entitled to summary judgment.

### 2. Dr. Tehrani

In his SAC, Plaintiff claims that, as a senior psychologist, Dr. Tehrani was aware of plaintiff's concerns regarding his claim that Dr. Murphy's evaluation contained falsehoods, yet Dr. Tehrani failed to even conduct an investigation into plaintiff's allegations. (SAC at 3A.) Dr. Tehrani responds that, as a senior psychologist at the FAD, she did not review life-inmate evaluations conducted by ACS psychologists such as Dr. Murphy, and, in particular, did not review plaintiff's evaluation conducted by Dr. Murphy. (Decl. Tehrani at ¶¶ 2, 6.) Further, Dr. Tehrani submits that she was not Dr. Murphy's supervisor. (Id. at ¶ 6.) Indeed, Dr. Tehrani disputes that she ever personally received any letter from plaintiff. (Id. at ¶¶ 7-8.)

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Henry A. v. Willden, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)). Where there is no evidence that the supervisor was personally involved or connected to the alleged violation, the supervisor may not be liable. See Edgerly v. City and County of San Francisco, 599 F. 3d 946, 961 (9th Cir. 2010) (finding no liability for supervisor based on personal

1  involvement because evidence showed he was not aware of arrest or search until after they were
2  completed and he authorized officers to cite and release plaintiff).

3  Plaintiff concedes that he has no evidence to dispute that Dr. Tehrani does not have a
4  supervisory connection to Dr. Murphy.  (Dkt. No. 197 at 5.)  Nonetheless, even assuming Dr.
5  Terhani had a supervisory role over Dr. Murphy, she cannot be liable on the basis of vicarious
6  liability.  See Palmer v. Sanderson, 9 F.3d 1433, 1438 (9th Cir. 1993) (state statute imposing
7  vicarious liability may not serve as basis for imposing liability in § 1983 case).  The court notes
8  that in both of plaintiff's letters addressed to Dr. Tehrani, plaintiff does not make mention that he
9  believed that Dr. Murphy's evaluation was purposely inaccurate in retaliation of plaintiff's
10 protected conduct.  (SAC, Exs. C at 17, F at 107-08.)  More importantly, because there is an
11 absence of a genuine issue of material fact whether Dr. Murphy retaliated against plaintiff,
12 plaintiff's claim against Dr. Tehrani necessarily fails.  See Jackson v. City of Bremerton, 268
13 F.3d 646, 653 (9th Cir. 2001) (recognizing that a supervisor cannot be held liable under § 1983
14 where no constitutional violation has occurred); Clegg v. Cult Awareness Network, 18 F.3d 752,
15 754-55 (9th Cir. 1994) ("the court is not required to accept legal conclusions cast in the form of
16 factual allegations if those conclusions cannot reasonably be drawn from the facts alleged").

17 Dr. Tehrani is entitled to summary judgment as a matter of law.

## CONCLUSION

19 The court GRANTS defendants' motion for summary judgment.  Accordingly, the court
20 finds it unnecessary to address defendants' argument for qualified immunity.  The Clerk shall
21 terminate all pending motions as moot and close the file.

22 IT IS SO ORDERED.
23 DATED: _____

*Ronald M. Whyte*
RONALD M. WHYTE
24 United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RICHARD G HALL,<br><br>        Plaintiff,<br><br>  v.<br><br>JASMINE A TEHRAN et al,<br><br>        Defendant. | Case Number: CV09-00057 RMW<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 29, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Richard Gary Hall C-07278
Correctional Training Facility
P.O. Box 689
YW-343up
Soledad, CA 93960-0689

Dated: March 29, 2013

                                            Richard W. Wieking, Clerk
                                            By: Jackie Lynn Garcia, Deputy Clerk